TERRITORY OF MONTANA, Respondent, *v.* GEORGE
          MOONEY, Appellant.

*Necessity of filing brief on appeal.* —In the case at bar, in which a defendant
   who had been convicted of embezzlement, appealed, no briefs were filed in the
   Supreme Court, and there was no oral argument of the appeal. The court
   found no error in the record, and expressed disapproval of the practice of appel-
   lants in criminal cases failing to comply with its rule, requiring a statement of
   the points and authorities relied upon on appeal.

*Appeal from the Second Judicial District, Deer Lodge County.*

STATEMENT.

The defendant, George Mooney, was convicted of embezzle-
ment in the District Court of Deer Lodge County, and sentenced
to a term of one year in the penitentiary.

The indictment against him charged the offense in the follow-
ing language: "That one George Mooney, late of the county of
Deer Lodge, Montana Territory, on or about the first day of
October, A. D. 1887, at the county of Silver Bow, and Territory
of Montana, was employed by one John Dowd, to proceed and
go to the county of Deer Lodge, and Territory of Montana, and
deposit one hundred dollars with one John Duncan, for the said
John Dowd, as a forfeit on a certain horse-race thereafter to
take place, and for such purpose the said John Dowd then and
there gave and intrusted to the said George Mooney, five United
States gold coins of the denomination of twenty dollars each,
and of the value of twenty dollars each, of the moneys, goods,
chattels, and personal property of him, the said John Dowd;
and that afterwards, on the first day of October, A. D. 1887,
at the county of Deer Lodge, and Territory of Montana, he, the
said George Mooney, while he was so employed by the said John
Dowd, as aforesaid, and while he was so intrusted with said
money and property as aforesaid, did then and there, at the said
county of Deer Lodge, unlawfully and feloniously embezzle and
convert the said money and property to his own use, with intent
and purpose then and there, at the said county of Deer Lodge,
in him, the said George Mooney, then and there, at the said
county of Deer Lodge, to steal the same."

The witnesses for the prosecution testified, upon the trial, sub-
stantially as follows:—

John Dowd: "I sent Mooney from Butte to Anaconda, with one hundred dollars in twenty-dollar gold pieces, to be given by him to Duncan, who was to arrange a horse-race for me. This was some time in September, 1887. I also gave Mooney twenty dollars for his expenses. Mooney returned and informed me that he had put the money in McLean's safe in Anaconda. Mooney had no interest in the one hundred dollars, which was my property. He was not in partnership with me. The money was not put up, and there was no race. I have never recovered the money." Marion testified that he was present when Dowd gave Mooney one hundred and twenty-five dollars and said to him: "You go down and give one hundred dollars to Duncan to put up as a forfeit, and there is twenty-five dollars for your expenses;" and also, when, upon Mooney's return, Dowd asked him if the match had been made and the money put up, and he had replied, yes; also, that Mooney had taken Dowd's horse down to Anaconda, and that he, witness, was afterwards sent to Anaconda by Dowd to look after the race, and found, upon arriving there, that there was to be none, and that Mooney had never placed the money in McLean's safe, as he claimed to have done. The Duncan already mentioned, testified that he had made arrangements with Dowd for a horse-race at Anaconda, but that it fell through, and that Mooney had never turned over any money to him. McLean, with whom Mooney said he had left the one hundred dollars, testified that he had not done so. Burch, with whom the proposed racing match was to have been made, testified that Mooney had shown him, at Anaconda, about the last of September, 1887, one hundred dollars in twenty-dollar gold pieces, and had told him that Dowd had sent the money down to put up as a forfeit on the horse-race; that Mooney was gambling on a small scale at the time; and that he went away from Anaconda the next day without putting up the money; and that no racing match was ever made. The prosecution resting, the defendant made a motion for a nonsuit, on the ground that the money was to be put up as a wager on a horse-race, and that the bailment being unlawful, the defendant could not be held in a criminal action. The motion was overruled, and an exception taken. The defendant claimed in his testimony that one half of the one hundred dollars was due him by

Dowd for wages; that the money was given him by Dowd for the purpose of arranging a fraudulent race, in which Dowd's horse was to be beaten, so that he and Burch, who was a party to the scheme, could win money; and that the understanding between himself and Dowd was that there was to be only a pretense of depositing it. He also claimed that Dowd had given him the money with the understanding that half of it was to be his, and that a kind of partnership in gambling existed between them. His explanation for not depositing the money as a forfeit was, that some of his friends would have lost money if the fraudulent race had been run.

Several witnesses who were called upon to testify as to the defendant's good character, stated that they knew him to be a working man, and that they had never heard anything reflecting upon his honesty. The instructions to the jury were as follows: —

The defendant, George Mooney, is accused of the crime of embezzling the sum of one hundred dollars, the property of John Dowd, committed in Deer Lodge County, Montana Territory, on or about the first day of October, 1887.

The defendant pleads not guilty; this plea requires proof upon the part of the prosecution of all the material allegations contained in the indictment, beyond a reasonable doubt.

If any clerk, apprentice, or servant, or any other person, whether bound or hired, to whom any money or goods or chattels or other property shall be intrusted by his master or employer, shall withdraw himself from his master or employer and go away with the money, goods, chattels, or other property, or any part thereof, with the intent to steal the same and defraud his master or employer thereof, contrary to the trust and confidence in him reposed by his said master or employer, or being in the service of his said master or employer, shall embezzle the said money, goods, chattels, or property, or any part thereof, or otherwise shall convert the same to his own use with like purpose to steal the same; every person so offending shall be punished · in the manner prescribed by law for feloniously stealing property of the value of the articles so taken, embezzled, or converted.

If the jury believe from the evidence that the money intrusted to Mooney by Dowd belonged to said Dowd, then the jury may

find the defendant guilty, although the jury may also believe that defendant may have been entitled to a part of the winnings.

If the defendant Mooney took the one hundred dollars from Dowd, and failed to place the same as he agreed to with said Dowd, and he converted it to his own use in any other way than as directed, then the jury may find the defendant guilty, although the money was given to him to be placed as a stake on a horse-race.

The court instructs you that a partnership is the relation which subsists between persons, who have agreed to combine their property, labor, or skill in some business, and to share the profits thereto between them.

You are instructed that one of two partners cannot be convicted of the offense set forth in the indictment in respect to the money, goods, and chattels of which the ownership and possession are in both partners.

The court further instructs you that if from all the evidence you have a reasonable doubt as to whether or not the relation of partners existed between the prosecuting witness, John Dowd, and the defendant, in relation to the proposed horse-race, and the money given to the defendant by the said Dowd, the defendant is entitled to such doubt, and you should acquit.

In every crime or public offense there must be a union, or joint operation of act and intention, or of act and criminal negligence. The intention is manifested by the circumstances connected with the perpetration of the offense, and the soundness or the maturity of the mind of the person committing the act.

The good character of the defendant, if you find the same from the evidence, may be considered by you as a fact or circumstance, tending, like any other fact or circumstance, to establish his innocence.

The defendant must be presumed innocent until proven guilty beyond a reasonable doubt.

A reasonable doubt is not such a doubt as a man may start by questioning for the sake of a doubt; nor is it a doubt suggested or surmised, without foundation in the facts proved. It is such a doubt only, as in a fair, reasonable effort to reach a conclusion upon the evidence, using the mind in the same manner as in other matters of importance, prevents the jury from

coming to a conclusion in which their minds rest satisfied. If so using the mind in considering all the evidence produced, it leads to a conclusion which satisfies the judgment, and leaves upon the mind a settled conviction of the truth of the fact, it is the duty of the jury so to declare the fact by their verdict. It is possible always to question any conclusion desired from the testimony. But such questioning is not what is meant by reasonable doubt; it is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. What is it, then, to be morally certain? Moral certainty is said to bear the same relation to human conduct that absolute certainty does to mathematical subjects. It is a state of impression, produced by facts, in which a reasonable mind feels a sort of coercion, or necessity to act in accordance with it. Is the juror so convinced by the evidence of the truth of the facts sought to be proven, that he himself would venture to act upon such conviction in matters of the highest and gravest importance to himself and his own interests. If he is so convinced he may declare himself morally certain, and then the juror may feel and say that he is convinced beyond a reasonable doubt.

Any defendant in a criminal action or proceeding may be allowed to be sworn, and testify in his own behalf. In such case the jury, in judging of the credibility of the witness, and of the weight to be given to his testimony, shall take into consideration the fact that he is the defendant, and the nature and the enormity of the crime of which he is accused.

A witness is presumed to speak the truth, but this presumption may be repelled by the manner in which he testifies, by the character of his testimony, and by his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility.

If you find that any witness has wilfully and deliberately testified falsely as to any material fact, you are at liberty to disregard his entire testimony.

If you find the defendant guilty of embezzlement in a sum over the value of fifty dollars, you may fix his punishment at

imprisonment in the territorial prison for a term of not less than one, nor more than fourteen years.

If you find the defendant not guilty, you will so declare by your verdict.

The jury returned a verdict as follows: "We, the jury, find the defendant guilty of embezzlement, and fix the punishment at one year's imprisonment in the territorial prison."

Thereupon the defendant moved the court to set aside the said verdict, for the reason that he had been found guilty of a crime not charged in the indictment. The court overruled said motion.

The defendant also made a motion for a new trial, on the ground that the verdict was against the law of the case, and was contrary to the weight of the evidence, inasmuch as a partnership in the money alleged to have been stolen had been proven between himself and Dowd; also on the ground of newly discovered evidence.

The evidence claimed to have been newly discovered was set forth in an affidavit of one Silas F. King, who swore that he had had a conversation with Dowd, on the twenty-ninth day of December, 1887, at Deer Lodge, Montana, in which Dowd had told him that he and Mooney were partners in the one hundred dollars which the latter was accused of stealing, and in all winnings which Mooney might make by gambling with the same, and that he, Mooney, had a right to wager said money as he saw fit. King also swore that he had not informed the defendant of the above interview with Dowd until after Mooney's trial. Accompanying the affidavit of King were affidavits of J. H. Duffy and J. R. Boarman, attorneys for the defendant, and one of Mooney himself, to the effect that they had not been aware of the evidence that King would give until after the trial, and that proper diligence had been exercised for the procurement of all evidence on the trial.

The court overruled the motion for a new trial, and judgment was rendered against the defendant in accordance with the verdict of the jury. The defendant appealed.

*W. E. Cullen,* Attorney-General, for Respondent.

*J. H. Duffy,* and *J. R. Boarman,* for Appellant.

LIDDELL, J.—The defendant was tried and convicted of the crime of embezzlement, on the 20th of December, 1887; and thereupon moved the court for a new trial, for the reason that the verdict was contrary to the law and the evidence, and on the further ground of newly discovered evidence, material to the defense. The motion being denied, and the accused sentenced, he appeals from the judgment, and we are now called upon to review the rulings complained of. The court has not had the benefit of brief or oral argument from either side; and we here desire to express our disapproval of the practice of appealing criminal cases to this court, and then neglecting to comply with the rule, which requires a statement of points and authorities relied on for appellant. Much labor and time will be saved to the court by observing this rule. Our attention not being called to any error relied on by the defendant for reversal, we have carefully examined the record, and find that the rulings of the trial judge were correct and in accordance with the law in every respect. The indictment is perfectly good, the verdict is responsive to the evidence, and we are satisfied that the defendant has had a fair and impartial trial. The judgment of the lower court is affirmed.

*Judgment affirmed.*

McCONNELL, C. J., and BACH, J., concur.